IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 21, 2022

## STATE OF TENNESSEE v. RASHAUD DEAVON WATSON

**Appeal from the Circuit Court for Montgomery County**
**No. 63CC1-2018-CR-659  Robert Bateman, Judge**

_____

### No. M2021-01354-CCA-R3-PC

_____

The petitioner, Rashaud Deavon Watson, appeals the denial of his post-conviction petition, arguing the post-conviction court erred in finding he received the effective assistance of counsel and entered a voluntary and intelligent plea.  Following our review, we affirm the post-conviction court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Wayne Clemons, Clarksville, Tennessee, for the appellant, Rashaud Deavon Watson.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; and Robert J. Nash, District Attorney General, for the appellee, State of Tennessee.

### OPINION

*Facts and Procedural History*

The petitioner was indicted by a Montgomery County grand jury for first-degree murder.  On December 19, 2019, the petitioner agreed to plead guilty to the lesser-included offense of second-degree murder in exchange for a sentence of twenty years in the Tennessee Department of Correction.

On July 13, 2020, the petitioner filed a pro se petition for post-conviction relief. After the appointment of counsel, the petitioner filed an amended petition for post-

conviction relief, alleging trial counsel was ineffective and his guilty plea was not voluntarily and intelligently entered. A hearing was held on October 6, 2021.

At the hearing, the petitioner testified that trial counsel was appointed to represent him at some point after the petitioner's preliminary hearing. While there is no testimony concerning the precise date of trial counsel's appointment, the petitioner first complained about trial counsel in a letter to the public defender's office dated October 5, 2018. In his letter, the petitioner stated that trial counsel was not "a fit for [his] case" and requested a new attorney be assigned. The petitioner also filed several motions with the trial court asking for trial counsel to be removed from his case. The record, however, does not speak to whether those motions were heard and/or how they were disposed of by the trial court.

The petitioner also claimed trial counsel only met with him twice and never discussed trial strategy with him. According to the petitioner, he requested a copy of the State's discovery and a copy of the transcript from his preliminary hearing, but trial counsel only provided him with a copy of the ballistics report.

Initially, the petitioner rejected the State's offer of second-degree murder with a sentence of twenty years in prison. Therefore, the petitioner's case was set for trial on January 27, 2020, with a pre-trial hearing set for December 16, 2019. Prior to the pre-trial hearing, trial counsel provided the petitioner with a letter outlining "certain information" about his case, including trial counsel's investigative efforts, the terms of the State's plea offer, and the petitioner's potential exposure should he go to trial and be found guilty of first-degree murder. Despite the information contained in the letter, the petitioner indicated his rejection of the State's plea offer. The petitioner, however, later accepted the State's offer because he "got nervous" and "just want to get it over with." According to the petitioner, he accepted the State's twenty-year offer because "if I go to trial, most likely I'm going to lose and I'll end up being 77 years old when I get out of prison." Finally, the petitioner noted that he was on medication at the time he entered his plea but the trial court never asked if he was under the influence of any medication. However, on cross-examination, the petitioner admitted he was on the same medication at the time of his guilty plea as he was during his post-conviction hearing.

Trial counsel was the only other witness called during the hearing. Trial counsel testified that he had been practicing for thirty years as a public defender and, during that time, had handled between twenty-five and thirty first-degree murder cases. At the time of the petitioner's case, the public defender's office and the district attorney general's office had a standing agreement requiring open file discovery. Therefore, while trial counsel's file did not contain a motion for discovery, he was certain he received all discovery from the State. Moreover, based on his normal business practice, trial counsel was certain he provided the petitioner with a complete set of the State's discovery. Trial counsel,

- 2 -

however, did not provide the petitioner with a copy of the preliminary hearing transcript because the petitioner never requested it.

In addition to providing the petitioner with a complete set of the State's discovery, trial counsel interviewed the potential witnesses, including tracking down the petitioner's co-defendant, who was in a rehabilitation facility in California. After speaking with her, trial counsel determined that she was not going to be helpful to the petitioner at trial. He also met with the petitioner on at least ten occasions according to the jail's records. During those meetings, they discussed the State's case against the petitioner, potential trial strategies, and the State's plea offer.

Because the petitioner initially rejected the State's offer, trial counsel was prepared to go to trial. However, prior to taking the petitioner's case to trial, trial counsel expressed his concerns and the likelihood of conviction if the petitioner took his case to trial. Trial counsel, therefore, provided the petitioner with a letter detailing his review of the case, the petitioner's potential exposure if convicted at trial, his plea negotiations with the State, and the terms of the State's "best and final" offer. Though the petitioner initially rejected the State's offer, trial counsel later received a call from the petitioner's mother informing him that the petitioner had changed his mind and would plead guilty. On the day of the pre-trial conference, the petitioner informed trial counsel of the same and entered a plea of guilty to second-degree murder for which he received a twenty-year sentence.

On November 2, 2021, the post-conviction court entered a written order denying the petition. This timely appeal followed.

### *Analysis*

On appeal, the petitioner contends the post-conviction court erred in denying his petition. More specifically, the petitioner insists his plea was not voluntarily and intelligently entered because the trial court failed to advise him in accordance with Tennessee Rule of Criminal Procedure 11(b) and because of his "subjective belief that his counsel was ineffective." Additionally, the petitioner argues trial counsel was actually ineffective. The State submits the post-conviction court properly determined the petitioner failed to meet the burden required of him. Upon our review of the record, the briefs of the parties, and the applicable law, we agree with the State and affirm the ruling of the post-conviction court.

To prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Appellate courts are bound by

the post-conviction court's factual findings unless the evidence preponderates against such findings. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Fields*, 40 S.W.3d at 456 (citing *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997)); *see also Kendrick*, 454 S.W.3d at 457. The trial court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick*, 454 S.W.3d at 457.

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley*, 960 S.W.2d at 579.

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)); *see also Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996). In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688); *see also Baxter*, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. Therefore, under the second prong of the *Strickland* analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

A substantially similar two-prong standard applies when the petitioner challenges counsel's performance in the context of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Don Allen Rodgers v. State*, No. W2011-00632-CCA-R3-PC, 2012 WL 1478764, at *4 (Tenn. Crim. App. April 26, 2012). First, the petitioner must show that his counsel's performance fell below the objective standards of reasonableness and professional

norms. *See Hill*, 474 U.S. at 58. Second, "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Relying on a letter to the public defender's office and motions he filed with the trial court prior to entering his guilty plea in which he claimed trial counsel was not "giving his 'case the proper treatment' and 'not putting in the effort,'" the petitioner claims trial counsel was ineffective. In his pre-trial letter and motions and his testimony during the post-conviction hearing, the petitioner made many general statements such as trial counsel "is not a fit for his case" and trial counsel was not working for him. However, the only specific claims the petitioner focused on was the amount of time counsel spent with him and whether or not counsel provided him with a copy of the State's discovery. During the post-conviction hearing, the petitioner also claimed the terms of his plea agreement suggest counsel was ineffective as he "was not provided a more favorable plea deal than he might have received at trial."

Concerning the amount of time counsel spent meeting with the petitioner and working on the petitioner's case, including whether the petitioner was provided with a copy of the State's discovery, the record overwhelmingly refutes the petitioner's claims. First, the petitioner claims trial counsel only met with him two or three times while he was awaiting trial. However, jail records introduced during the hearing show that trial counsel visited the petitioner on ten different occasions with a majority of those visits lasting at least an hour. Per trial counsel's testimony, they discussed the State's discovery and trial strategy, as well as potential plea agreements, during those visits. In addition to meeting with the petitioner, trial counsel also interviewed key witnesses, including tracking down and interviewing the petitioner's co-defendant, who was in a rehabilitation facility in California and who trial counsel described as unhelpful to the petitioner's case. Finally, trial counsel testified that during the time he represented the petitioner, the public defender's office and the district attorney general's office had a written agreement requiring open file discovery and that his practice was to provide his clients with a copy of the State's discovery. Though the post-conviction court did not specifically find trial counsel more credible than the petitioner, such a determination is implicit in the post-conviction court's ruling. More specifically, the post-conviction court stated,

> the [c]ourt finds that trial counsel's performance did not fall below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." In fact, the [c]ourt finds trial counsel's performance to have both met and exceed the standard.

In order to reach such a conclusion when the testimony of the petitioner and trial counsel differed so drastically, the post-conviction court clearly accredited the testimony of trial counsel over that of the petitioner. While the post-conviction court did not directly accredit the testimony of trial counsel over that of the petitioner, based on the court's ruling resolving the factual dispute in favor of trial counsel's testimony, we can infer the accreditation of trial counsel's testimony, and nothing in the record preponderates against the factual findings of the post-conviction court. *See Tidwell v. State*, 922 S.W.2d 497, 500 (Tenn. 1996).

With regards to the petitioner's claim that trial counsel was ineffective because the petitioner's plea did not result in a sentence more favorable than a sentence he might have received had he gone to trial, the record, including the petitioner's own testimony, does not support his claim. First, the post-conviction court and the petitioner both acknowledged the likelihood of conviction had the petitioner gone to trial. In its order denying the petition for post-conviction relief, the post-conviction court found that the petitioner "failed to show that he would be convicted on a lesser charge." Additionally, the petitioner testified that he pled guilty because if he had gone to trial he was "most likely [] going to lose and I'll end up being 77 years old when I get out of prison."

In addition to his belief that he would likely be convicted at trial and, therefore, receive a life sentence, the petitioner's quote also establishes the benefit in terms of the length of sentence he received by pleading guilty. As noted in trial counsel's letter to the petitioner and in the post-conviction court's order, the petitioner was facing a life sentence if convicted of first-degree murder. As such, the earliest possible release date for the petitioner would be after serving fifty-one years at which time the petitioner would be in his late seventies. However, by pleading guilty to second-degree murder and accepting a sentence of twenty years, the petitioner would be forty-two years old at the time of his release. Clearly, as found by the post-conviction court, the plea negotiated by trial counsel was immensely more favorable to the petitioner than the likely result of a trial. The record supports the post-conviction court's determination that the petitioner received effective representation from trial counsel. The petitioner, therefore, is not entitled to relief on this claim.

The petitioner also claims he is entitled to post-conviction relief because the trial court failed to conduct a proper plea colloquy and did not comply with Rule 11 of the Tennessee Rules of Criminal Procedure. Though he argues generally that the trial court erred in determining whether the petitioner understood the "eleven items" listed in the rule, his only specific claim is that the trial court failed to "address the maximum and minimum mandatory penalty for second-degree murder with the [petitioner], as required."

Tennessee Rule of Criminal Procedure 11(b) requires the following, in pertinent part:

(1) *Advising and Questioning the Defendant.* Before accepting a guilty or nolo contendere plea, the court shall address the defendant personally in open court and inform the defendant of, and determine that he or she understands, the following:

(A) The nature of the charge to which the plea is offered;

(B) the maximum possible penalty and any mandatory minimum penalty;

(C) if the defendant is not represented by an attorney, the right to be represented by counsel--and if necessary have the court appoint counsel--at trial and every other stage of the proceeding;

(D) the right to plead not guilty or, having already so pleaded, to persist in that plea;

(E) the right to a jury trial;

(F) the right to confront and cross-examine adverse witnesses;

(G) the right to be protected from compelled self[-]incrimination;

(H) if the defendant pleads guilty or nolo contendere, the defendant waives the right to a trial and there will not be a further trial of any kind except as to sentence;

(I) if the defendant pleads guilty or nolo contendere, the court may ask the defendant questions about the offence to which he or she has pleaded. If the defendant answers these questions under oath, on the record, and in the presence of counsel, the answers may later be used against the defendant in a prosecution for perjury or aggravated perjury;

(J) if the defendant pleads guilty or nolo contendere, it may have an effect upon the defendant's immigration or naturalization status, and, if the defendant is represented by counsel, the court shall determine that the defendant has been advised by counsel of the immigration consequences of a plea; and

(K) if the defendant pleads guilty or nolo contendere to an offense for which he or she will receive an additional sentence of community supervision for life, the fact that he or she will receive the additional sentence, and, if the defendant is represented by counsel, the court shall determine that the defendant has been advised by counsel of the community supervision for life sentence and its consequences.

(2) *Insuring That Plea Is Voluntary.* Before accepting a plea of guilty or nolo contendere, the court shall address the defendant personally in open court and determine that the plea is voluntary and is not the result of force, threats, or promises (other than promises in a plea agreement). The court shall also

inquire whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the district attorney general and the defendant or the defendant's attorney.

Tenn. R. Crim. P. 11(b).

After reviewing the transcript from the petitioner's plea submission hearing, we recognize that although the trial court complied with some requirements in Rule 11(b), it did not specifically inform the petitioner of the maximum penalty for second-degree murder as required by Rule 11(b)(1)(B). In *Boykin v. Alabama,* 395 U.S. 238, 243-44, 89 S. Ct. 1709, (1969), the United States Supreme Court held that trial courts must question defendants to ensure that they understand, by entering a guilty plea, that they are waiving the following constitutionally-based rights: the privilege against self-incrimination, the right to a jury trial, and the right to confront their accusers. Because "the additional processes for accepting a guilty plea that *Mackey*[1] and Rule 11 require are not necessarily constitutionally based," "an allegation that a trial court failed to follow either the *Mackey* procedure or Rule 11 does not necessarily establish a cognizable post-conviction claim because post-conviction relief is only available to remedy an abridgement of a state or federal constitutional right." *Garcia v. State*, 425 S.W.3d 248, 263 (Tenn. 2013). "Absolute literal compliance with [Rule 11] is not required"; instead, the trial court is only required to "substantially comply with these mandates." *Howell v. State*, 185 S.W.3d 319, 331 (Tenn. 2005). "A trial court substantially complies with these mandates when it expresses the sense of the substance of the required advice to a defendant who is seeking to plead guilty." *Id*. "'Where there is substantial compliance the root purpose of the prescribed litany has been served and the guilty plea passes due process scrutiny because it was made voluntarily and understandingly.'" *Id*. (citation omitted).

In considering the significance of the trial court's omission regarding the mandate in Rule 11(b)(1)(B), we note that the petitioner acknowledged during the post-conviction hearing "if I go to trial, most likely I'm going to lose and I'll end up being 77 years old when I get out of prison." Moreover, trial counsel testified that he informed the petitioner of the potential sentence he was facing should he go to trial and be convicted versus the potential sentences he faced as a result of pleading to second-degree murder. Trial counsel even reduced his explanation to writing in which he set forth the maximum and minimum sentence for second-degree murder, provided the petitioner with a copy of the letter, and the petitioner acknowledged the same. Accordingly, we conclude the trial court's omission regarding the maximum penalty for second-degree murder did not result in the petitioner's entering an unknowing and involuntary plea.

---

[1] State v. Mackey, 553 S.W.2d 337 (Tenn. 1977).

As part of his voluntariness claim, the petitioner also encourages this Court to consider "as a circumstantial factor in his case his subjective belief that [trial counsel] was ineffective." Despite the petitioner's attempt to present his claim as a novel issue, we see no difference between the claim presented by the petitioner and a routine claim by any petitioner arguing their plea was not voluntarily or intelligently entered due to the actions or inactions of trial counsel. Our conclusion is supported by the petitioner's own argument in this matter. In his brief to this Court, the petitioner's only argument in support of his claim is a portion of his testimony from the post-conviction hearing in which he testified that he pled guilty because "he just wanted to get it over with" and then listed several things he claims trial counsel failed to do. He then states the following:

> As detailed in the next section, the [petitioner]'s petition should have been granted on grounds of ineffective assistance of counsel. In the alternative, if this Court were to find that [trial counsel] was not ineffective, [the petitioner] asks that his subjective belief in counsel's ineffectiveness, as demonstrated by his motions, letters, and testimony at the hearing, be considered as a factor in determining whether his plea was voluntary.

In short, the petitioner asks this Court to twice review the effect of trial counsel's actions on the petitioner's decision to plead guilty. As noted by the petitioner, there is no authority supporting his position, and we, therefore, decline to create a new precedent and review the same claim twice.

## *Conclusion*

Based on the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
J. ROSS DYER, JUDGE